738 N.E.2d 1007 (2000)
317 Ill.App.3d 227
250 Ill.Dec. 538
In re R.E., a Minor (The People of the State of Illinois, Petitioner-Appellee,
v.
Albert V. Edwards, Respondent-Appellant).
No. 4-00-0275.
Appellate Court of Illinois, Fourth District.
November 1, 2000.
*1008 Adele M. Saaf (Court-appointed), Jennings, Novick, Smalley & Davis, P.C., Bloomington, for Albert V. Edwards.
Charles G. Reynard, State's Attorney, Bloomington, Norbert J. Goetten, Director, Robert J. Biderman, Deputy Director, David E. Mannchen, Staff Attorney, State's Attorneys Appellate Prosecutor, Springfield, for the People.
Justice KNECHT delivered the opinion of the court:
On September 3, 1998, the trial court adjudicated R.E. (born August 28, 1997), the minor child of respondent, Albert Edwards, and Heidi Peden neglected pursuant to section 2-3(1)(b) of the Juvenile Court Act of 1987(Act) (705 ILCS 405/2-3(1)(b) (West 1998)). On December 17, 1998, the court adjudicated R.E. a ward of the court and appointed the Department of Children and Family Services (DCFS) as her guardian with the power to place her. DCFS initially left R.E. in the custody of Albert and Heidi, later removed and then returned her to their care in the summer of 1999, and then finally removed her on September 24, 1999.
The State filed a petition to terminate both Albert's and Heidi's parental rights on October 8, 1999, alleging both parents were unfit because they (1) failed to make reasonable efforts to correct the conditions that were the basis for removing R.E.; (2) failed to make reasonable progress toward R.E.'s return within nine months of the adjudication of neglect; and (3) failed to protect the child from conditions within her environment injurious to her welfare. 750 ILCS 50/1(D)(m), (D)(g) (West 1998). On March 7, 2000, the trial court found both Albert and Heidi unfit on all grounds alleged and granted the State's petition.
Albert appeals arguing, first, the trial court erred in finding he failed to make reasonable progress or efforts within nine months of the adjudication of neglect because these provisions do not apply as he retained custody of R.E. during the applicable period. Second, Albert contends the trial court's finding he failed to protect R.E. from conditions within her environment that were injurious to her was against the manifest weight of the evidence. We affirm.
The case began when the State alleged R.E. was residing in an environment injurious to her welfare due to unresolved issues of domestic violence that placed R.E. at risk of harm. In September 1998, both parents stipulated to the allegations of the petition at the adjudicatory hearing and the trial court adjudged R.E. neglected. In December 1998, the court conducted a dispositional hearing, made R.E. its ward and appointed DCFS as her guardian. The court entered a dispositional order setting the permanency goal as "remain home," placing both parents under an order of protective supervision, and directing that the client service plan require Heidi to address domestic violence issues.
On June 4, 1999, the trial court found the permanency goal of "remain home" was still the proper permanency goal. The court also found Albert unfit within the meaning of section 2-27(1) of the Act. 705 ILCS 405/2-27(1) (West 1998).
The trial court removed R.E. from Heidi's care on June 15, 1999, reportedly because of unauthorized contact between R.E. and Albert. On July 23, 1999 the court entered an agreed order of protective supervision returning R.E. to Heidi, forbidding contact between R.E. and Albert except during supervised visits and requiring Heidi to undergo a domestic violence assessment and cooperate with and complete any recommended treatment.
The trial court held another permanency hearing on September 24, 1999. The court found the goal of "remain home" had not been achieved and adopted the goal of "substitute care pending court determination." The trial court found both Albert *1009 and Heidi unfit within the meaning of section 2-27(1) of the Act (705 ILCS 405/2-27(1) (West Supp.1999)) and placed R.E. into nonrelative foster care. Heidi appealed that order and this court affirmed. In re R.E., No. 4-99-1004 (June 30, 2000) (unpublished order under Supreme Court Rule 23).
In October 1999, the State filed its petition to terminate Albert's parental rights, and in March 2000, the trial court conducted a hearing on the petition. The trial court terminated both Albert and Heidi's parental rights at that time.
Albert and Heidi had a history of domestic violence requiring police intervention and resulting in two convictions for Albert for domestic battery prior to R.E.'s birth. Domestic strife occurred when Albert was intoxicated. Another incident in November 1997 precipitated DCFS involvement. According to a witness to the incident, Albert and Heidi engaged in an argument and Albert swung at Heidi while R.E. was in her arms. Albert either struck or brushed R.E. R.E. was frightened and cried and Heidi took R.E. to the emergency room on the advice of the responding police officer. No injuries to R.E. were found.
Other violence between the parties was denied except for once when Albert punched Heidi, causing injuries requiring stitches, although DCFS investigators were aware of another incident where Albert had pulled Heidi's hair. Heidi minimized the violence in their relationship and made excuses.
The conditions that caused the removal of R.E. from Albert's parental authority were the unaddressed issues of violence between himself and Heidi that caused an injurious environment for R.E. At the termination hearing in March 2000, approximately 17 months after the adjudication of neglect and 15 months after the dispositional order completing the adjudication, concerns about Albert's domestic abuse and anger management were still largely unaddressed despite his completion of a domestic violence counseling treatment program. It appeared Albert would require additional long-term counseling to deal with this issue. Albert also had a problem with illicit drug abuse that he denied or minimized and he did not seek treatment until after the petition to terminate parental rights had been filed.
Albert contends, as a matter of law, the finding of unfitness based on his failure to make either reasonable progress or efforts toward the return of R.E. was improper. Albert does not contest the trial court's factual finding there had been insufficient efforts or progress on his part. Instead, he argues the provisions of section 1(D)(m) of the Adoption Act (750 ILCS 50/1(D)(m) (West 1998)) providing a parent may be found unfit and his or her parental rights terminated for failure to make reasonable efforts or progress toward the return of his or her child do not apply because he retained custody of R.E. during the applicable nine-month period.
Section 1(D)(m) provides a parent may be found unfit and his or her parental rights terminated for:
"Failure by a parent to make reasonable efforts to correct the conditions that were the basis for the removal of the child from the parent, or to make reasonable progress toward the return of the child * * * within [nine] months after an adjudication of neglected or abused minor * * *." 750 ILCS 50/1(D)(m) (West 1998).
Albert argues the statutory language of section 1(D)(m) of both "reasonable efforts" and "reasonable progress" is premised upon the child having been removed from the parent. He contends the plain language of section 1(D)(m) cannot apply to cases where the child was never in substitute care during the nine months following the adjudication of neglect because, without the child's removal from the custody of the parents, there were no conditions that were the "basis for the removal of the child" nor could there be a "return *1010 of the child" (emphasis added) (750 ILCS 50/1(D)(m) (West 1998)).
Albert contends the applicable nine-month period under section 1(D)(m) runs from the order of adjudication on September 3, 1998, until June 3, 1999, during which time he and Heidi retained custody of R.E. although Albert, himself, was incarcerated from March 29, 1999, through June 12, 1999, for a probation violation after testing positive for cannabis. The supreme court has held section 1(D)(m) of the Act limits the evidence that may be considered regarding reasonable efforts or reasonable progress to the parent's conduct occurring in the first nine months after the adjudication of neglect. In re D.L., 191 Ill.2d 1, 10, 245 Ill.Dec. 256, 727 N.E.2d 990, 994 (2000). This time period begins to run from the filing of the dispositional order following the adjudication of neglect. In re D.S., 313 Ill.App.3d 1020, 1027-28, 246 Ill.Dec. 612, 730 N.E.2d 637, 643 (2000). Hence, the relevant dates for purposes of evaluating reasonable efforts or reasonable progress in this case are from the December 17, 1998, filing of the court's dispositional order completing the neglect adjudication through September 17, 1999. During that period, R.E. was in foster care from June 15 through July 23, and Albert and Heidi retained custody the remainder of the time.
Although R.E. was actually in foster care only part of the time during the applicable nine-month period following the adjudication of neglect, that fact is not determinative. We reject Albert's interpretation of section 1(D)(m) and find the words "return" and "removal" do not necessarily refer only to the actual physical custody of a child.
R.E. was found to be neglected on September 3, 1998. On December 17, 1998, R.E. was made a ward of the court and guardianship was transferred from Albert and Heidi to the Department of Children and Family Services (DCFS). The trial court also entered an order of protective supervision that day detailing the actions Albert and Heidi had to take to regain guardianship of their daughter, including cooperating with DCFS directives.
As a result of the wardship, R.E. was subject to the dispositional powers of the court. As the court-appointed guardian, DCFS was given:
"[T]he duty and authority to act in the best interests of the minor, subject to residual parental rights and responsibilities, to make important decisions in matters having a permanent effect on the life and development of the minor and to be concerned with his or her general welfare. It includes but is not necessarily limited to:
* * *
(c) the rights and responsibilities of legal custody except where legal custody has been vested in another person or agency * * *." 705 ILCS 405/1-3(8) (West 1998).
Legal custody is defined as:
"[T]he relationship created by an order of court in the best interests of the minor which imposes on the custodian the responsibility of physical possession of a minor and the duty to protect, train[,] and discipline him and to provide him with food, shelter, education[,] and ordinary medical care, except as these are limited by residual parental rights and responsibilities and the rights and responsibilities of the guardian of the person, if any." 705 ILCS 405/1-3(9) (West 1998).
By virtue of this same order of wardship, Albert was deprived of all rights to his child other than:
"[T]hose rights and responsibilities remaining with the parent after the transfer of legal custody or guardianship of the person, including, but not necessarily limited to, the right to reasonable visitation (which may be limited by the court in the best interests of the minor * * *), the right to consent to adoption, the right to determine the minor's religious *1011 affiliation, and the responsibility for his support." 705 ILCS 405/1-3(13) (West 1998).
This statutory authority gave DCFS, as guardian, the authority to place R.E. in an appropriate living arrangement. The permanency goal set forth in the order, "remain home," was simply that, a goal; and, if it was not met and R.E.'s well-being was at risk, DCFS had the authority to change her living arrangements. Thus, R.E. had been removed from the authority of Albert and Heidi even though she was allowed to reside with them while under the authority and control of her guardian.
Further, where a service plan has been established to address the conditions that were the basis for removal of the child from the parent, section 1(D)(m) of the Adoption Act states the "failure to make reasonable progress toward the return of the child" includes:
"the parent's failure to substantially fulfill his or her obligations under the service plan and correct the conditions that brought the child into care within [nine] months after the adjudication [of neglect]." 750 ILCS 50/1(D)(m) (West 1998).
In this case, a service plan was established and Albert was required to comply with its terms to correct the conditions that necessitated DCFS involvement and guardianship. 705 ILCS 405/2-23(1)(c) (West 1998). Albert's failure to address the issues that brought R.E.'s case to the attention of DCFS in the first place correctly resulted in a finding of unfitness against him and the eventual termination of his parental rights despite the fact R.E. was allowed to reside with him and Heidi during much of the first nine months after the adjudication of neglect.
Albert also contends the trial court erred in terminating his parental rights based on a finding he failed to protect R.E. from conditions in her environment injurious to her welfare. He contends this provision could not be used to terminate his parental rights but only as a basis to remove R.E. from his physical custody as there was no evidence R.E. was ever harmed or that he failed to intervene to protect R.E. We need not address this argument, however, because a finding of parental unfitness may be based on evidence sufficient to support any one statutory ground (In re J.T.C., 273 Ill.App.3d 193, 198, 209 Ill.Dec. 881, 652 N.E.2d 421, 424 (1995)), and we have already determined the trial court properly found Albert unfit based on his failure to make reasonable progress or efforts toward the return of R.E.
We affirm the judgment of the trial court.
Affirmed.
STEIGMANN and GARMAN, JJ., concur.